IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| GEN1 RESEARCH, LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Action No. 6:18-cv-00327 |
| INTERSPOND, LLC, | § § § | |
| *Defendant*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Gen1 Research, LLC ("Gen1") bring this action for declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202 for the purpose of determining questions of actual controversy between it and its former manager—Defendant Interspond, LLC ("Interspond") who claims a perpetual limited power of attorney over Gen1 and entitlement to commissions on Gen1's existing and perspective business contracts with third parties under an expired and now defunct agency agreement. The agency agreement expired by its own terms on September 5, 2018, dissolving Interspond's limited power of attorney and right to any commissions on Gen1's existing or prospective contracts. Moreover, Interspond has failed to comply with the conditions precedent to its receipt of any commissions because it either failed to or never provided services necessary to earn any such commission. For the forgoing reasons, Gen1 requests this Court issue a declaration of its rights with respect to and between itself and Interspond.

### I. PARTIES

1. Gen 1 is a Delaware limited liability company existing and organized under the laws of the State of Delaware and maintaining its principal place of business at 9433 Bee

#5809051.3

Caves Road, Suite 125, Austin Texas 78738. Gustavo Artaza is Gen1's sole member, he is a citizen of the State of Texas.

2. Interspond is a Wisconsin limited liability company organized under the laws of the State of Wisconsin and maintaining its principal place of business at 25 Turnwood Circle, Verona, Wisconsin 53593. Upon information and belief, all of the members of Interspond are citizens of the State of Wisconsin. Interspond may be served though its registered agent—Kathleen S. Cox—at 25 Turnwood Circle, Verona, Wisconsin 53593.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the dispute is between citizens of different state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Interspond because it systematically does business within the State of Texas. Gen1 and Interspond entered into an agreement related to the sourcing and operation of clinical medical trials in Texas, and other locations, knowing Gen1 was located in Texas and its network of research physicians, clinical trial patients and participants, and research facilities sourced from its headquarters in Austin, Texas. In addition to it contacts with Texas via Gen1, Interspond also does business with other clinical research facilities located in in Sugarland, College Station, Beaumont, and Liberty, Texas.

5. This Court is a proper venue under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omission giving rise to Gen1's claim occurred in the Western District of Texas. Alternatively, this Court is a proper venue under 28 U.S.C. §1391(b)(3) because Interspond is subject to the Court's personal jurisdiction because it systematically does business in the Western District of Texas.

6. A justiciable controversy exists between Gen1 and Interspond. In response to

multiple written and oral communications from Gen 1 notifying Interspond that its limited power of attorney and agency had been terminated, Interspond has and continues to refuse to acknowledge its termination and continues to purport to act on Gen1's behalf as its agent pursuant to a limited power of attorney. Interspond further claims entitlement to ongoing fees and commissions under an expired and now defunct contract. This court has jurisdiction over Gen1's claim for declaratory relief.

### III.     FACTUAL BACKGROUND

**A.  Gen1 Research, LLC**

7.    Gen1 is a full-scale clinical research service company that connects research physicians, patients, and research facilities with relevant clinical trial opportunities. Gen1 handles all aspects of the clinical trial process and offers turnkey clinical trials across a multitude of therapeutic disciplines.

8.    Gen1 provides all of the necessary personnel, training, certifications, technology, and infrastructure needed for physicians to conduct clinical research trials and studies and for patients to get access to new medical treatments for chronic and systemic diseases and illnesses. Gen 1 handles every aspect of the clinical trial process for its physician and patient clients, including, but not limited to: patient identification and qualification to research site activation, patient/participant enrollment, study initiation, and study conclusion, among others.

9.    Gen 1 provides a complete support system for its doctors and patients, so they can focus on conducting clinical trials to the highest standards and advancing medical research and receiving the treatment they need.

10.    Gen1's goal is expedite the medical trial process while decreasing costs and increasing efficiencies, so medical breakthroughs in new cutting edge medicines and treatments can reach patients faster and cheaper.

**B. Interspond, LLC**

11. Interspond holds itself out as a trial management organization, whose primary purpose is to identify clinical trial and research study opportunities for clinical research sites—such as those in Gen1's network. As part of its services, Interspond also claims to assists in the study start-up process and in negotiating the budget and clinical trial agreements ("CTAs") on behalf of the research sites, as well as handling all the billing and collection for clinical studies.

**C. The Network Agreement**

12. Because of the rapid growth of its network of research physicians, patients and study participants, and research facilities, Gen1 sought additional support in identifying and screening clinical study opportunities that fit its physician, patient, and site network. One company that claimed it could provide this services was Interspond.

13. Gen 1 engaged Interspond, and other similar companies, to assist generating leads on clinical study opportunities and handle the invoicing and collection of accounts receivable for Gen1's study facilitators and participants.

14. On March 5, 2018, Gen1 and Interspond entered into an Exclusive Agency/Network Agreement (the "Network Agreement").

15. The Network Agreement had an initial term of six months—expiring by its own terms on September 5, 2018—unless renewed for a period agreed to by both parties in writing.

16. Under the Network Agreement, Interspond was appointed Gen1's agent and exclusive manager in the fields of clinical study identification, marketing, budget and contract negotiation, and collection of accounts receivable related to the therapeutics area of gastroenterology and women's health.

17. During the term of the Network Agreement, Interspond was obligated to advise and counsel Gen 1 in the selection and consideration of study opportunities, patient enrollment

activities, collection of accounts receivable, the selection or creation of vehicles for Gen1's research capabilities, as well as any and all matters pertaining to publicity, public relations, and advertising, among others.

18. In exchange for these services, Interspond was to receive either 0%, 10%, or 50% of certain fees and monies due Gen1 during the term of the Network Agreement, depending on the service associated with the fee (the "Commissions").

19. Pursuant to its duty to assist Gen1 with collection of accounts receivable, Interspond was granted a limited power of attorney to collect all fees and monies earned or accruing to Gen1 from all sources governed by the Network Agreement and was required to remit the net fee to Gen1, after deducting its Commissions.

20. During the term of the Network Agreement, Gen1 entered into three CTAs; two for the study of Uterine Fibroids and one on Endometriosis (collectively the "Ongoing Trials").

21. The parties also identified 6 other clinical research studies that were compatible with Gen1's network of research physicians, patients, and facilities (collectively the "Trial Opportunities").

22. Because of persistent issues with Interspond's inattention to timely and accurately invoicing the study sponsors, collecting accounts receivable, and lack of transparency in its budgeting and contracting processes, among others, Gen1 chose not to renew the Network Agreement at expiration of the initial six month term.

23. As of today, Gen1 has still not executed CTAs for the Trial Opportunities identified during the term of the Network Agreement.

**D. Termination and Expiration of The Network Agreement**

24. On September 4, 2018, Gen1 notified Interspond in writing that it would not be renewing or extending the Network Agreement and that it would expire by its own terms on

September 5, 2018. Gen1 also notified Interspond that its decisions was based in part on the invoicing and transparency issues identified above.

25. Despite Gen1's clear and unequivocal expression, Interspond refuses to take no for an answer and continues representing itself as Gen1's agent. Indeed, Interspond continues to insert itself in the billing and collection of fees for the Ongoing Trials as well as attempt to execute CTAs on Gen1's behalf for the Trial Opportunities.

26. For example, on October 24, 2018, Interspond emailed Gen1 requesting revisions to the proposed budget and CTA for one of the Trail Opportunities. Gen 1 responded by reminding Interspond that the Network Agreement was no longer in force, that Interspond no longer had a limited power of attorney, and demanding that Interspond cease submission of the proposed budget and CTA for the study.

27. Interspond would not be deterred, responding that because the Trial Opportunities were identified during the term of the Network Agreement, Interspond still had the authority to execute CTA's on Gen1's behalf and that Gen1 was contractually obligated to move forward with the Trial Opportunities and continue to work with it.

28. Gen1 rejected Interspond's perpetual agency claim and warned it against continuing to hold itself out as Gen1's agent.

29. Interspond continued to ignore Gen1's warnings, stating "we will continue to do business as usual for the studies that were identified during the term of the [Network Agreement] … th[e] termination had no [e]ffect on the studies currently in process" and that "Gen1 is contractually obligated to work with Interspond on the studies identified during the term of [the Network Agreement] … [t]he fact that the agreement is now expired does not change that fact … Interspond will continue to negotiate the contract and budgets per our [standard operating

procedures] … we would prefer your input, but *will not* hold up finalizing terms because of your lack of response."

30.     Gen1's counsel then wrote to Interspond on October 25, 2018, demanding that it cease and desist representing itself as Gen1's agent and halt all negotiation, submission, and execution of budgets and CTAs for the 6 Trial Opportunities.  Gen1 further notified Interspond that it no longer had a right to continue its involvement in or collect any Commissions for the 3 Ongoing Trials.

31.     On October 29, 2018, Interspond responded to Gen1's demand letter and reasserted its claim of a limited power of attorney and authority to execute CTAs for the Trial Opportunities on Gen1's behalf, demanding payment on the 6 Trial Opportunities under the commission structure of the Network Agreement, despite the absence of any executed CTAs for these trials.  Interspond also erroneously asserted that it is entitled to Commissions with respect to the 3 Ongoing Trials despite the termination of the Network Agreement on September 5, 2018.

### IV.     CAUSES OF ACTION – DECLARATORY JUDGMENT

32.     Gen1 realleges and incorporates by reference all prior paragraphs as if fully set forth in this count.

33.     Gen1 requests a declaratory judgment pursuant to the Declaratory Judgments Act, 28 U.S.C. §§2201-2202, that (a) the Network Agreement expired on September 5, 2018, (b) Interspond's authority to act as Gen1's agent terminated on September 5, 2018; (c) Interspond is not entitled to any Commissions from the Ongoing Trials after September 5, 2018; and (d) Interspond is not entitled to any Commissions from the Trial Opportunities.

   a)   *The Network Agreement Expired On September 5, 2018*

34.     Section 11 of the Network Agreement states that "[t]he term of this agreement

shall be made for a period of six months, commencing on the signature date" and that the "agreement may be renewed for a period agreed to by both parties." The Network Agreement was fully executed on March 5, 2018, and, thus expired by its own terms on September 5, 2018.

35. Although not required by the terms of the Network Agreement, Gen1 notified Interspond in writing on September 4, 2018 (and multiple times thereafter) that it would not be renewing or extending the Network Agreement in any for or fashion. In its September 4th letter, Gen1 made clear that it was not interested in renewing or extending the Network Agreement or in working with Interspond any further. For all these reasons, the Network Agreement was no longer in effect after September 5, 2018.

   b) *Interspond's Authority To Act As Gen1's Agent Expired On September 5, 2018*

36. For the reasons set forth above, Gen1 seeks a declaration that because the Network Agreement ceased to exist after September 5, 2018, Interspond's limited power of attorney and authority to negotiate and execute CTA's on Gen1's behalf or have any further involvement (including invoicing and collecting accounts receivable) with respect to the Ongoing Trials terminated on September 5, 2018, and Interspond has no right or authority to negotiate and execute CTA's on Gen1's behalf or have any further involvement (including invoicing and collecting accounts receivable) with respect to the Ongoing Trials or the Trial Opportunities.

   c) *Interspond Is Not Entitled To Any Commissions From The Ongoing Trials*

37. Gen1 also seeks a declaration that Interspond is not entitled to any Commissions from the Ongoing Trials.

38. Section 7 of the Network Agreement governs Interspond's right to payment.

39. Section 7, however, must be understood in conjunction with rest of the Network Agreement, namely Sections 1 and 2, which limit Interspond's right to

Commissions solely to fees and monies due Gen1 during the six month "term of the agreement".

40.  Thus, by the express terms of the Network Agreement, Interspond is only entitled to Commissions on fees and monies owed to Gen1 from March 5, 2018 to September 5, 2018 (the six month term of the agreement), and Interspond is not entitled to any Commissions on the fees or monies owed Gen1 after September 5, 2018 on the Ongoing Trials.

41.  Because Gen1 has never agreed to extend the Network Agreement, and because Interspond's right to payment under the Network Agreement is limited to the life of the agreement itself, Gen1 seeks a declaration that Interspond is not entitled to any Commissions on the fees or monies owed Gen1 after September 5, 2018 stemming from the Ongoing Trials.

    d)  *Interspond Is Not Entitled To Any Commissions From The Trial Opportunities*

42.  Gen1 also seeks a declaration that Interspond is not entitled to any Commissions from the Trial Opportunities identified during the term of the Network Agreement.

43.  Sections 1, 2 and 7 of the Network Agreement set forth conditions precedent to Interspond's right to Commissions on the Trial Opportunities, none of which have been met.

44.  First, the Network Agreement conditions Interspond's right to Commissions on Gen1 actually receiving compensation for services provided a clinical research study. Because Gen1 has not executed any CTAs for the Trial Opportunities, it has not provided any services for those studies and is not entitled to any compensation for any of the Trial Opportunities.

45.  Second, as mentioned above, Sections 1 and 2 limit Interspond's right to

Commissions to fees or monies earned by Gen1 during the term of the Network Agreement.

46. Because the Network Agreement terminated on September 5, 2018, Interspond has not right to any Commissions from the Trial Opportunities, for which any fees or monies will not be earned or due to Gen1 until after September 5, 2018, if ever.

47. Third, Section 2 further conditions Interspond's right to Commissions on Interspond providing certain services to Gen1.  To earn any Commissions on the Trial Opportunities, Interspond must:

> advise and counsel [Gen1] in the selection or consideration of study opportunities, patient enrollment activities, collection of accounts receivable, and the selection or creation of vehicles for [Gen1]'s research capabilities … in any and all matters pertaining to publicity, public relations, advertising, capabilities of Network, and shall advise and counsel the Network to the Fields and will advise the formation of [study principal investigator] CVs.

Interspond is not entitled to any Commissions until it has complied with all of these conditions precedent, because the Trial Opportunities have not come to fruition, Interspond has yet to provide any services related to the selection or consideration of patient enrollment activities, collection of accounts receivable, or the selection or creation of vehicles for Gen1's research capabilities, among others.

48. Interspond is not entitled to any Commissions until it fulfilled *all* the conditions precedent of Sections 1, 2, and 7.  Because it has not done so, Gen 1 seeks a declaration that that Interspond is not entitled to any Commissions from the Trial Opportunities.

## V.     **PRAYER**

Gen1 prays that Interspond be cited to appear and answer, and that the Court grant Gen1 the following relief:

   a. a declaration that the Network Agreement terminated on September 5, 2018;

   b. a declaration that Interspond's authority to act as Gen1's agent terminated on September 5, 2018;

c. a declaration that Interspond is not entitled to any Commissions from the Ongoing Trials after September 5, 2018;

d. a declaration that Interspond is not entitled to any Commissions on the Trial Opportunities; and

e. such other and further relief, either at law or in equity, to which Gen1 may show itself justly entitled.

Date: November 1, 2018

Respectfully submitted,

BRACEWELL LLP

By: */s/ Chad P. Ennis*
Chad P. Ennis
*Attorney-in-Charge*
Texas State Bar No. 24045834
111 Congress Ave., Suite 2300
Austin, Texas 78701
512-494-3622 (telephone)
800-404-3970 (facsimile)
chad.ennis@bracewell.com

ATTORNEYS FOR PLAINTIFF

Of Counsel:

BRACEWELL LLP

William A. Moss
(*Will file Pro Hac Vice*)
Texas State Bar No. 24078041
Will.Moss@bracewell.com
711 Louisiana, Suite 2300
Houston, Texas  77002-2781
713-223-3400 (telephone)
800-404-3970 (facsimile)